FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

13 MAR -4 PM 1:14

ALAN M. GROCHAL, AS RECEIVER
FOR TRANS HEALTHCARE, INC.,

    Plaintiff

Case No.: 8:13cv582T35 AEP

v.

THE ESTATE OF JUANITA AMELIA JACKSON,
by and through CATHY JACKSON-PLATTS, f/k/a
CATHERINE WHATLEY, Personal Representative;

THE ESTATE OF ELVIRA NUNZIATA, by and through
RICHARD NUNZIATA, Personal Representative;

and

THE ESTATE OF JOSEPH WEBB, by and through
ROSE M. WEBB, Personal Representative,

    Defendants.
_____/

## COMPLAINT FOR DECLARATORY RELIEF
## AND DEMAND FOR JURY TRIAL

The Plaintiff, ALAN M. GROCHAL, AS RECEIVER FOR TRANS HEALTHCARE, INC. (the "Receiver"), by and through its undersigned counsel, hereby sues THE ESTATE OF JUANITA AMELIA JACKSON, by and through CATHY JACKSON-PLATTS, f/k/a CATHERINE WHATLEY, Personal Representative; THE ESTATE OF ELVIRA NUNZIATA, by and through RICHARD NUNZIATA, Personal Representative; and THE ESTATE OF JOSEPH WEBB, by and through ROSE M. WEBB, Personal Representative, and states as follows:

1

## PRELIMINARY STATEMENT

1. This is an action for declaratory relief brought by ALAN M. GROCHAL, AS RECEIVER FOR TRANS HEALTHCARE, INC., with respect to actions taken by counsel for the three Defendants hereto designed to keep their opponent away from court in three separate nursing home negligence cases resulting in $1,210,000,000.00 in judgments against TRANS HEALTHCARE, INC. and its former subsidiary, TRANS HEALTH MANAGEMENT, INC.

2. The Receiver seeks a declaration that the aforementioned judgments are void as a result of Defendants' counsel's conduct that induced the Receiver to cease defending state court nursing home negligence litigation filed by Defendants against TRANS HEALTHCARE, INC. and TRANS HEALTH MANAGEMENT, INC., which ultimately led to empty chair trials and in excess of $1.2 Billion in judgments. Alternatively, the Receiver seeks a declaration that the aforementioned judgments are void in that the respective underlying complaints upon which they are based fail to state a cause of action.

3. Rule 1.540(b) of the Florida Rules of Civil Procedure allows the Court to relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding due to "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party" or where "the judgment or decree is void," and does not limit the Court from entertaining an independent action for these purposes.

## THE PARTIES

4. TRANS HEALTHCARE, INC. ("THI") is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Maryland. THI was a holding company and did not own or operate any nursing homes. In January 2009, the

2

Circuit Court for Baltimore County, Maryland ("Baltimore County Court") entered an Order Appointing Receiver ("Receivership Order") which, among other things, appointed the Receiver to liquidate and administer the assets of THI and its subsidiaries (the "THI Entities"), vested the Receiver with full title to the THI Entities' assets and full power to enforce the obligations or liabilities in favor of the THI Entities, and authorized the Receiver to manage all litigation to which any THI Entity is a party and to manage disputes involving creditors. A substitute receiver was appointed on July 27, 2010, and the term "Receiver" as used herein shall refer to the original receiver and substitute receiver. Since the entry of the Receivership Order, the Receiver has performed his functions subject to the approval of, and in a proceeding conducted by, the Baltimore County Court (the "Receivership Proceeding").

5. THE ESTATE OF JUANITA AMELIA JACKSON, by and through CATHY JACKSON-PLATTS, f/k/a CATHERINE WHATLEY, Personal Representative ("JACKSON ESTATE") is a Florida estate in Polk County, Florida.

6. THE ESTATE OF ELVIRA NUNZIATA, by and through RICHARD NUNZIATA, Personal Representative ("NUNZIATA ESTATE") is a Florida estate in Pinellas County, Florida.

7. THE ESTATE OF JOSEPH WEBB, by and through ROSE M. WEBB, Personal Representative ("WEBB ESTATE") is a Florida estate in Alachua County, Florida.

8. The JACKSON ESTATE, the NUNZIATA ESTATE, and the WEBB ESTATE shall be referred to collectively as the "ESTATES" or the "DEFENDANTS."

## OTHER PERTINENT INDIVIDUALS AND ENTITIES

9. TRANS HEALTH MANAGEMENT, INC. ("THMI") is THI's former subsidiary. Until early 2006, THI owned all of the stock of THMI, which provided operational support services to health care facilities throughout the United States but did not itself own or operate any nursing homes. In March 2006, THI sold all of its stock in THMI to an unrelated third party. Pursuant to certain perceived obligations arising from the parties' longstanding course of conduct, THI has defended THMI in certain tort litigation matters relating to claims that allegedly arose while THI owned THMI, including, but not limited to, the underlying state court litigation filed by the respective DEFENDANTS. In fact, THI had been providing a defense for THMI in the underlying state court litigation filed by the respective DEFENDANTS for several years prior to the commencement of the Receivership Proceeding. Upon the Receiver's appointment, the Receiver continued defending THMI to ensure that no THMI obligation might by default exhaust the limited assets of the THI estate to the detriment of THI's other creditors.

10. The JACKSON ESTATE, the NUNZIATA ESTATE, and the WEBB ESTATE are all represented by the same law firm, Wilkes & McHugh, P.A. (the "WILKES FIRM"), and were all represented by the WILKES FIRM in the underlying state court litigation.

## JURISDICTION AND VENUE

11. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332.

12. The Receiver is a Maryland Receiver, duly appointed by the Circuit Court for Baltimore County, Maryland.

13. THI is a Delaware corporation with its principal place of business in Maryland, and the Defendants are all Florida estates.

14. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

15. Venue is proper in the United States District Court for the Middle District of Florida since the conduct complained of occurred herein and both the JACKSON ESTATE and the NUNZIATA ESTATE are deemed to reside in the geographical area assigned to the Middle District of Florida.

16. This action is brought to determine issues, rights and liabilities of an actual and present controversy between the parties involving the validity of state court judgments.

17. There are substantial bona fide doubts, disputes and questions that must be resolved concerning whether the underlying judgments are void.

18. Relief herein is sought pursuant to the federal declaratory judgment statute, 28 U.S.C. § 2201.

## THE JACKSON ESTATE

19. The JACKSON ESTATE filed a nursing home negligence action on July 30, 2004 in the Circuit Court for the Tenth Judicial Circuit, in and for Polk County, Florida.

20. Mrs. Jackson was a resident at Auburndale Oaks Healthcare Center located in Auburndale, Florida, from August 23, 2002 through December 1, 2002, and March 27, 2003 through May 30, 2003.

21. The licensee for Auburndale Oaks Healthcare Center was Briar Hill, Inc.

22. The JACKSON ESTATE sued numerous defendants, including THI and THMI, for alleged non-lethal negligence damages, lethal negligence damages, wrongful death damages, and as to Briar Hill, Inc., breach of fiduciary duty.

23. Neither THI nor THMI owned or operated Auburndale Oaks Healthcare Center. THMI provided operational support services to the facility from June 1, 2002 to October 1, 2004, and THI had no relationship with the facility at all.

24. THI and THMI actively defended against the allegations in this case for years.

## THE NUNZIATA ESTATE

25. The NUNZIATA ESTATE filed a nursing home negligence action on December 23, 2005 in the Circuit Court for the Sixth Judicial Circuit, in and for Pinellas County, Florida.

26. Mrs. Nunziata was a resident at Pinellas Park Care and Rehabilitation Center located in St. Petersburg, Florida, from August 14, 2003 through October 12, 2004.

27. Upon information and belief, the licensee for Pinellas Park Care and Rehabilitation Center was Pinellas Park Nursing Home, Inc. and/or HQM of Pinellas Park, LLC.

28. The NUNZIATA ESTATE sued numerous defendants, including THMI, for alleged non-lethal negligence damages, lethal negligence damages, wrongful death damages, and as to Pinellas Park Nursing Home, Inc. and HQM of Pinellas Park, LLC, breach of fiduciary duty.

29. Neither THI nor THMI owned or operated Pinellas Park Care and Rehabilitation Center. THMI provided operational support services to the facility from November 1, 2002 to March 8, 2004, and THI had no relationship with the facility at all.

30. THMI actively defended against the allegations in this case for years.

## THE WEBB ESTATE

31. The WEBB ESTATE filed a nursing home negligence action on June 16, 2006 in the Circuit Court for the Eighth Judicial Circuit, in and for Alachua County, Florida.

32. Mr. Webb was a resident at University Place Care and Rehabilitation Center located in Gainesville, Florida, from about 1995 through February 15, 2005.

33. Upon information and belief, the licensee for University Place Care and Rehabilitation Center was Gainesville Health Care Center, Inc. and/or HQM of Gainesville, LLC.

34. The WEBB ESTATE sued numerous defendants, including THI and THMI, for alleged negligence damages, post confirmation negligence damages (as to Gainesville Health Care Center, Inc., Integrated Health Services, Inc., and I.H.S. Acquisition No. 153, Inc.), and breach of fiduciary duty (as to Gainesville Health Care Center, Inc. and HQM of Gainesville, LLC), but only sought damages for the dates of residency of May 15, 2001 through February 15, 2005.

35. Neither THI nor THMI owned or operated University Place Care and Rehabilitation Center. THMI provided operational support services to the facility from November 1, 2002 to March 8, 2004, and THI had no relationship with the facility at all.

36. THI and THMI actively defended against the allegations in this case for years.

### REPRESENTATIONS BY THE ESTATES' COUNSEL

37. To help the Receiver identify and limit the THI liabilities, the Baltimore County Court issued an order requiring all potential creditors or claimants of the THI Entities to file proofs of their claims within 120 days of the Receivership Order, by May 11, 2009 (the "Original Claims Bar Date"), or their claims would be disallowed.

38. When the Original Claims Bar Date arrived, neither the ESTATES nor THMI had filed a proof of claim against THI in the Receivership Proceeding.

39. Nevertheless, the Receiver went to extraordinary lengths to assure itself that the ESTATES would not seek a recovery from the Receivership Proceeding.

40. First, the Receiver moved the Baltimore County Court to set a second claims bar date (the "Second Claims Bar Date") to give the ESTATES a second chance to file claims in the Receivership Proceeding.

41. The Baltimore County Court granted that motion, and set the Second Claims Bar Date as December 9, 2009.

42. The notice of the Second Claims Bar Date expressly stated that any person having a claim against the THI Entities "MUST" file them, under oath, with the Clerk of the Baltimore County Court and that "**A PERSON WHO FAILS TO FILE A CLAIM WITHIN THE TIME ALLOWED WILL NOT SHARE IN ANY DISTRIBUTION FROM THE RECEIVERSHIP ESTATE.**" (capitalization and boldface appears in the Baltimore County Court's notice).

43. Second, the Receiver served the ESTATES with multiple copies of the Court's notice of this Second Claims Bar Date.

44. Third, prior to the Second Claims Bar Date, counsel for the Receiver spoke with counsel for the ESTATES on two different occasions (September 10, 2009 and November 9, 2009) to remind counsel that the Second Claims Bar Date was approaching.

45. During both conversations, counsel for ESTATES affirmatively stated that he would not file claims for the ESTATES and that none of his clients, including the JACKSON ESTATE, the NUNZIATA ESTATE, and the WEBB ESTATE, would seek any distribution from the Receivership Estate.

46. Because the ESTATES and THMI did not file timely claims, and because the ESTATES' counsel affirmatively waived any claims the ESTATES may have had in the Receivership Proceeding, the Receiver relied on their waiver of rights against the Receivership Estate

and concluded that it would be a waste of the Receivership Estate's limited assets to continue to defend the underlying state court litigation filed by the ESTATES.

47. Thus, in or about April 2010, the Receiver stopped defending THI and THMI in various tort litigation, including the underlying state court litigation involving the ESTATES.

## THE JUDGMENT IN JACKSON AND ENTRIES OF DEFAULT IN NUNZIATA AND WEBB

48. Notwithstanding the promises by the ESTATES' counsel, the JACKSON ESTATE proceeded to a jury trial against an empty chair and obtained a $110,000,000 Final Judgment against THI and THMI, which the Polk County Circuit Court Judge entered on July 22, 2010.

49. The NUNZIATA ESTATE moved for entry of default against THMI, which the Pinellas County Circuit Court Judge granted on March 2, 2011. The NUNZIATA ESTATE subsequently amended its complaint, and the Pinellas County Circuit Court Judge entered a second default against THMI on July 8, 2011.

50. The WEBB ESTATE moved for entry of default against THI and THMI, which the Alachua County Circuit Court Judge granted on March 16, 2011 as to THI and May 16, 2011 as to THMI.

## THE CREEKMORE MOTION

51. On November 29, 2011, the ESTATES along with other tort claimants represented by the WILKES FIRM filed a motion (the "CREEKMORE MOTION") in the Circuit Court for the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida.[1]

---

[1] This motion is referred to as the "Creekmore Motion" because the style of the Miami-Dade case is Trans Healthcare, Inc. v. Bonnie Creekmore. THI had originally filed that action to domesticate the Receivership Order and seek a stay of pending nursing home negligence litigation in Florida consistent with the Receivership Order.

52. The CREEKMORE MOTION was entitled "Motion to Determine the Estate Have Timely Filed Claims and Compel Acknowledgement of the Estates' Claims By Receiver."

53. As the title of the motion suggests, the ESTATES sought a determination by the Miami-Dade Circuit Court that the ESTATES had timely filed claims in the Receivership Proceeding pending in Baltimore County, as well as an order compelling the Receiver to acknowledge the claims of each of the ESTATES "as if they had been filed directly in the Maryland Receivership in accordance with the bar dates."

54. Despite THI not being a defendant in the NUNZIATA case, the NUNZIATA ESTATE was also a movant in the CREEKMORE MOTION.

55. The CREEKMORE MOTION was a complete reversal on the promises made by the ESTATES' counsel not to seek recoveries against the THI Receivership Estate, after the JACKSON ESTATE had obtained a judgment against THI and THMI, the NUNZIATA ESTATE had obtained an entry of default against THMI, and the WEBB ESTATE had obtained an entry of default against THI and THMI, all without any opposition as a result of the ESTATES' counsel's deception.

### THE DEFAULT JUDGMENTS IN NUNZIATA AND WEBB

56. Following the CREEKMORE MOTION, it became obvious that the ESTATES' counsel had reneged on the representations that the ESTATES would not seek recoveries against the THI Receivership Estate.

57. As a result, the Receiver hired counsel to recommence the defense of THI and THMI in the WEBB case and THMI in the NUNZIATA case.

58. THMI's counsel appeared on the first day of trial in the NUNZIATA case, but the Pinellas County Circuit Court Judge struck counsel's appearance and filings and did not allow THMI to be represented by counsel at trial. That decision is currently on appeal in state court.

59. The NUNZIATA ESTATE proceeded to a jury trial against an empty chair and obtained a $200,000,000 Final Judgment against THMI, which the Pinellas County Circuit Court Judge entered on January 11, 2012.

60. Counsel for THI and THMI also appeared on the first day of trial in the WEBB case, but the Alachua County Circuit Court Judge *sua sponte* struck counsel's appearance after the WEBB ESTATE'S counsel moved to strike a Pro Hac Vice motion filed by defense counsel to admit the Receiver's Maryland counsel. That decision is currently on appeal in state court.

61. The WEBB ESTATE proceeded to a jury trial against an empty chair and obtained a shocking $900,000,000 judgment against THI and THMI, which the Alachua County Circuit Court Judge entered on February 10, 2012.

## COUNT I

### DECLARATORY RELIEF DUE TO FRAUD, MISREPRESENTATION, OR OTHER MISCONDUCT (JACKSON ESTATE)

62. The Receiver, on behalf of THI, hereby re-alleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 61 above as if set forth fully herein.

63. All conditions precedent to the institution and maintenance of this cause of action have occurred or have been waived.

64. The Receiver, on behalf of THI, asserts that his position, as set forth in this Complaint, is legally sound and supported by fact and law. The JACKSON ESTATE'S actions,

however, have created a bona fide controversy between the parties, and the Receiver is in doubt as to THI's rights, privileges and immunities with respect to the judgment challenged herein. The Receiver requires, therefore, a declaratory judgment declaring THI's rights, privileges and immunities. There is a clear, present, actual, substantial and bona fide justifiable controversy between the parties.

65. The JACKSON ESTATE'S counsel represented to the Receiver for THI that his client would not pursue any claims against the Receivership Estate.

66. In justifiable reliance upon those representations, the Receiver terminated the defenses of the claim being prosecuted by the JACKSON ESTATE and other tort claimants represented by the WILKES FIRM in order to seek to preserve estate assets.

67. These representations turned out to be false -- after obtaining the judgment, the JACKSON ESTATE'S counsel sought to assert his client's claim against the Receivership Estate through the CREEKMORE MOTION.

68. The JACKSON ESTATE'S counsel's conduct which was designed to keep THI and THMI away from court, and which did in fact keep THI and THMI away from court, renders the judgment void with no prospective effect and warrants the declaratory relief sought herein.

69. Declaratory relief is appropriate under 28 U.S.C. § 2201.

## COUNT II

## DECLARATORY RELIEF DUE TO FRAUD, MISREPRESENTATION, OR OTHER MISCONDUCT (NUNZIATA ESTATE)

70. The Receiver, on behalf of THI, hereby re-alleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 61 above as if set forth fully herein.

71. All conditions precedent to the institution and maintenance of this cause of action have occurred or have been waived.

72. The Receiver, on behalf of THI, asserts that his position, as set forth in this Complaint, is legally sound and supported by fact and law. The NUNZIATA ESTATE'S actions, however, have created a bona fide controversy between the parties, and the Receiver is in doubt as to THI's rights, privileges and immunities with respect to the judgment challenged herein. The Receiver requires, therefore, a declaratory judgment declaring THI's rights, privileges and immunities. There is a clear, present, actual, substantial and bona fide justifiable controversy between the parties.

73. The NUNZIATA ESTATE'S counsel represented to the Receiver for THI that his client would not pursue any claims against the Receivership Estate.

74. In justifiable reliance upon those representations, the Receiver terminated the defenses of the claim being prosecuted by the NUNZIATA ESTATE and other tort claimants represented by the WILKES FIRM in order to seek to preserve estate assets.

75. These representations turned out to be false -- after obtaining the default, the NUNZIATA ESTATE'S counsel sought to assert his client's claim against the Receivership Estate through the CREEKMORE MOTION, despite THI not even having been a defendant in the NUNZIATA case.

76. The NUNZIATA ESTATE'S counsel then opposed the attempts to have new counsel for THMI appear and defend the claim. The new counsel was not permitted to appear to defend THMI at the jury trial in the NUNZIATA case.

77. The NUNZIATA ESTATE'S counsel's conduct which was designed to keep THMI away from court, and which did in fact keep THMI away from court, renders the judgment void with no prospective effect and warrants the declaratory relief sought herein.

78. Declaratory relief is appropriate under 28 U.S.C. § 2201.

## COUNT III

### DECLARATORY RELIEF DUE TO FRAUD, MISREPRESENTATION, OR OTHER MISCONDUCT (WEBB ESTATE)

79. The Receiver, on behalf of THI, hereby re-alleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 61 above as if set forth fully herein.

80. All conditions precedent to the institution and maintenance of this cause of action have occurred or have been waived.

81. The Receiver, on behalf of THI, asserts that his position, as set forth in this Complaint, is legally sound and supported by fact and law. The WEBB ESTATE'S actions, however, have created a bona fide controversy between the parties, and the Receiver is in doubt as to THI's rights, privileges and immunities with respect to the judgment challenged herein. The Receiver requires, therefore, a declaratory judgment declaring THI's rights, privileges and immunities. There is a clear, present, actual, substantial and bona fide justifiable controversy between the parties.

82. The WEBB ESTATE'S counsel represented to the Receiver for THI that his client would not pursue any claims against the Receivership Estate.

83. In justifiable reliance upon those representations, the Receiver terminated the defenses of the claim being prosecuted by the WEBB ESTATE and other tort claimants represented by the WILKES FIRM in order to seek to preserve estate assets.

84. These representations turned out to be false -- after obtaining the default, the WEBB ESTATE'S counsel sought to assert his client's claim against the Receivership Estate through the CREEKMORE MOTION.

85. The WEBB ESTATE'S counsel then opposed the attempts to have new counsel for THI and THMI appear and defend the claims. The new counsel was not permitted to appear to defend THI and THMI at the jury trial in the WEBB case.

86. The WEBB ESTATE'S counsel's conduct which was designed to keep THI and THMI away from court, and which did in fact keep THI and THMI away from court, renders the judgment void with no prospective effect and warrants the declaratory relief sought herein.

87. Declaratory relief is appropriate under 28 U.S.C. § 2201.

## COUNT IV

### DECLARATORY RELIEF DUE TO FAILURE TO STATE A CAUSE OF ACTION (JACKSON ESTATE)

88. The Receiver, on behalf of THI, hereby re-alleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 61 above as if set forth fully herein.

89. All conditions precedent to the institution and maintenance of this cause of action have occurred or have been waived.

90. The Receiver, on behalf of THI, asserts that his position, as set forth in this Complaint, is legally sound and supported by fact and law. However, there is a bona fide controversy between the parties, and the Receiver is in doubt as to THI's rights, privileges and immunities with respect to the judgment challenged herein. The Receiver requires, therefore, a declaratory judgment declaring THI's rights, privileges and immunities.

There is a clear, present, actual, substantial and bona fide justifiable controversy between the parties.

91. The operable complaint in the underlying nursing home negligence action was the JACKSON ESTATE'S Fifth Amended Complaint.

92. THI and THMI moved to dismiss this Fifth Amended Complaint asserting, among other things, the JACKSON ESTATE'S failure to set forth ultimate facts entitling the pleader to relief.

93. More specifically, THI and THMI moved to dismiss the Fifth Amended Complaint on the basis that the complaint was filled with vague and conclusory allegations that failed to specify any facts that could establish THI and THMI were negligent.

94. Because the JACKSON ESTATE'S Fifth Amended Complaint failed to state a cause of action as to THI and THMI, the judgment rendered thereon is void.

95. Declaratory relief is appropriate under 28 U.S.C. § 2201.

## DEMAND FOR JURY TRIAL

96. THI hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff, ALAN M. GROCHAL, AS RECEIVER FOR TRANS HEALTHCARE, INC., respectfully requests this Honorable Court declare the Final Judgments obtained by the JACKSON ESTATE, the NUNZIATA ESTATE, and the WEBB ESTATE against THI and THMI void with no prospective effect, and grant such further relief as this Honorable Court deems appropriate.

Respectfully submitted,

*/s/*

RICHARD B. MANGAN, JR., ESQUIRE
Florida Bar Number 0947156
ERIC F. OCHOTORENA, ESQUIRE
Florida Bar Number 0048786
BRYAN R. SNYDER, ESQUIRE
Florida Bar Number 0042340
Rissman, Barrett, Hurt, Donahue & McLain, P.A.
1 N. Dale Mabry Highway, 11th Floor
Tampa, Florida 33609
Telephone: (813) 221-3114
Facsimile: (813) 221-3033
Email: rbm.service@rissman.com
       efo.service@rissman.com
       brs.service@rissman.com
Attorneys for the Plaintiff, Alan M. Grochal, as Receiver for Trans Healthcare, Inc.

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Alan M. Grochal, as Receiver for Trans Healthcare, Inc.

**DEFENDANTS**
The Estate of Juanita Amelia Jackson, by and through Cathy Jackson-Platts, f/k/a Catherine Whatley, Personal Representative, et al.

(b) County of Residence of First Listed Plaintiff   Baltimore County, MD
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Polk County, Florida
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Richard Mangan, RISSMAN BARRETT HURT DONAHUE & MCLAIN
1 N. Dale Mabry Highway, 11th Floor, Tampa, Florida 33609
Tel. (813) 221-3114

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / **Habeas Corpus:** | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332 and 28 USC 2201
Brief description of cause:
declaratory judgment action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ declaratory relief
CHECK YES only if demanded in complaint
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE: 03/04/2013
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

13 MAR -4 PM [FILED]